NEW DELLS LUMBER COMPANY, Appellant, vs. WISCONSIN TAX COMMISSION, Respondent.

*April 3—November 11, 1930.*

For the appellant there were briefs by *Bundy, Beach & Holland* of Eau Claire, and oral argument by *P. M. Beach*.

For the respondent there was a brief by the *Attorney General* and *A. L. Hougen* of Manitowoc, special counsel, and oral argument by *Mr. Hougen*.

The following opinion was filed July 22, 1930:

ROSENBERRY, C. J.   We shall follow the same general method of treatment in this case that was followed in the *Northwestern Lumber Co. v. Wisconsin Tax Commission Case* above referred to.

### Stumpage Values.

In this case the same situation is presented as was disclosed in the *John S. Owen Lumber Co. v. Wisconsin Tax Commission Case* (*ante*, p. 391, 231 N. W. 872, 233 N. W. 96). Depletion was taken in the years prior to January 1, 1916, at a rate higher than the average value of the timber found by the commission.   The problem in this case is to discover the value of the timber as of January 1, 1916.   In order

to do this it is necessary to consider its value on January 1, 1911. While it seems unfair to the state to permit a higher rate of depletion taken by the taxpayer in former years to stand, nevertheless under the law what is to be found is not what escaped taxation but the value of what the assets were on January 1, 1916, and as to those assets on hand January 1, 1911, their value as of that date. If the taxpayer in the meantime was permitted to take depletions at too high a rate the state is the loser. If it took the depletions at too low a rate the taxpayer is the loser. In this case the commission found that the taxpayer had on hand January 1, 1916, 89,921,870 feet of timber and that the value was $153,014.14. The value is diminished by reason of the fact that the taxpayer in the years prior to January 1, 1916, took depletion at too high a rate. The statement should be adjusted as indicated in the *John S. Owen Lumber Company Case,* decided herewith (*ante,* p. 391, 231 N. W. 872, 233 N. W. 96).

## *Lumber Inventories.*

Because of the fact that the situation presented in this case involves considerations of fact not arising in the other cases, we shall set out the decision of the commission in part, which is affirmed for the reasons stated in the *Rust-Owen Lumber Co. v. Wisconsin Tax Commission Case,* decided herewith (*ante,* p. 385, 231 N. W. 870) :

"In computing its lumber inventories, the taxpayer corporation priced its lumber in four groups: *i. e.* pine, hemlock, birch, and other hardwood. The prices thus computed by the taxpayer for the various years were as follows:

"1. 1915 and 1916. Each group was computed at prices representing the then prevailing market price, less a handling charge of $2 per M for pine and hemlock and $1 per M for birch and other hardwood.

"2. For the year ended 1917 the four groups were again priced at market less $2 per M handling charge for all lum-

ber in the yard and less $1.40 for lumber in the drying sheds.

"3. For the year ended 1918 the average yearly selling price was used for each group, less $3.50 per M for lumber in the yard and $1.75 for lumber in the sheds. This inventory was then further reduced in an amended return filed with the Tax Commission by the sum of $18,352.27 or an average reduction of $2.77 per M, apparently on the grounds that any increase in the selling price over the December 31, 1917, inventory was abnormal and speculative.

"4. For the year 1919, pursuant to a resolution passed by the board of directors on December 22, 1919, the inventory was valued 'according to the values as placed on like grades of lumber in the corrected inventory of last year (1918) plus the estimated additional cost of production for the year 1919.' In other words, from the prices established by the company for the four groups, in 1917, $3.50 per M was deducted for lumber in yard and $1.75 per M for lumber in shed; then to the total inventory was added $4.09 per M as the estimated increased cost of production for the year 1919 over that of the year 1918.

"5. For the years 1920, 1921, and 1922 the same inventory prices were used for each group as in the 1919 inventory. The small variations in the company's average inventory prices for all groups from 1919 to 1922 inclusive is due to annual increases and decreases in the quantity of lumber in each of the four groups. It appears that some consideration was given by the company to annual variations in such items as selling expense, shipping and planing expense, general expense, cash discount, and depreciation of lumber while drying. The figures in Schedule 9 of the commission's audit report of February 4, 1926, show that the company did not actually use these items in computing its inventories for 1920 to 1922, inclusive. If these expenses had actually been used in the inventory computation, the resulting inventories would have been just as incorrect because such expenses (consisting only of a few items of the company's expenses and costs) would have been applied in 1920, 1921, and 1922 to 1917 inventory figures, which in turn were based on 1917 selling prices.

"6. For purposes of the 1923 inventory the average selling price per M feet of each of the four groups of lum-

ber was determined for the year. From these average prices per M feet, there was deducted the following:

| | Hemlock and pine. | Birch and other hardwood. |
|---|---|---|
| Selling expense | $1 00 | $1 00 |
| Shipping and planing-mill expense | 2 00 | 1 00 |
| Fifty per cent. general expense | 1 65 | 1 65 |
| Carrying charge | 1 00 | 1 50 |
| Depreciation | 2 00 | 4 00 |
| Market doubt | 2 00 | 6 00 |
| Total | $9 65 | $15 15 |

"The inventory prices for the four groups were therefore determined as follows:

| | Average selling price. | Reduction. | Inventory value used. |
|---|---|---|---|
| Pine | $58 13 | $9 65 | $48 48 |
| Hemlock | 29 77 | 9 65 | 20 12 |
| Birch | 45 85 | 15 15 | 30 70 |
| Other hardwood | 50 34 | 15 15 | 35 19 |

"7. In 1924 the average selling price of each group was determined by the same method as used in 1923. From these average selling prices per M was deducted the following:

| | Hemlock and pine. | Birch and other hardwood. |
|---|---|---|
| Selling expense | $1 00 | $1 00 |
| Shipping and planing-mill expense | 2 32 | 1 00 |
| Fifty per cent. general expense | 1 65 | 1 65 |
| Carrying charge | 1 00 | 1 50 |
| Depreciation | 2 00 | 4 00 |
| | $7 97 | $9 15 |
| Less market doubt | 1 00 | 1 00 |
| Total | $6 97 | $8 15 |

"The inventory prices as determined for the year 1924 were therefore as follows:

| | Average selling price. | Reduction. | Inventory value used. |
|---|---|---|---|
| Pine | $39 65 | $6 97 | $32 68 |
| Hemlock | 26 79 | 6 97 | 19 82 |
| Birch | 43 48 | 8 15 | 35 33 |
| Other hardwood | 40 26 | 8 15 | 32 11 |

"A comparison of the above methods of inventorying discloses the following facts:

"For the years 1915, 1916, and 1917 the taxpayer has used the selling price as of the end of the year as a basis, from which there has been deducted an estimated handling charge to arrive at a market price. For the year 1918 the taxpayer again used the selling prices at the end of the year as a basis, from which it deducted an estimated handling charge; and then later it revised the 1918 inventory by using the basic prices used in the 1917 inventory. The result was to inventory lumber at the end of 1918 at a lower value than at the end of 1917, regardless of the fact that the cost of such lumber and the market price thereof had materially increased.

"For the year 1919 the taxpayer used the 1918 revised values (which in turn were based on 1917 figures) and added thereto an estimated increased cost of production. The result was an inventory based neither on market nor on cost.

"For the years 1920, 1921, and 1922 the taxpayer used the same prices as for the 1919 inventory, regardless of the fact that there were material changes in the selling price of lumber and in the cost of lumber as disclosed by the taxpayer's own records.

"For the years 1923 and 1924 the taxpayer again changed its method of pricing inventory and used the average selling price of lumber for the year less an estimated deduction for selling expense, shipping and planing-mill expense, general expense, carrying charge, and depreciation of lumber in pile. A further adjustment was then made for market doubt. In the year 1923, $2 per M was used to *reduce* the inventory price of hemlock and pine and $6 per M was used to *reduce* hardwoods because of 'market doubt.' In the year 1924 $1 per M was used to *increase* the entire inventory because of 'market doubt.' In 1923, when the company's profits were large, the inventory was *decreased* on account of 'market doubt,' and in 1924, when the company's profits were small, the inventory was *increased* on account of 'market doubt.' If a 'market doubt' *deduction* had been taken in 1924 similar to that of 1923 instead of the 1924 'market doubt' *increase,* the books would have shown a large loss for 1924.

"The methods used by the taxpayer in valuing inventories have not been consistent, and have resulted in the anticipation of profits in some years and the understatement of income in other years. The following schedule gives a comparison of the inventory prices as used by the taxpayer with the average selling price, the average cost, and the profit as shown by the books for each year:

| Year ending Dec. 31. | Average inventory price. | Average selling price. | Average cost as revised. | Profit per books. |
|---|---|---|---|---|
| 1915 | $14 08 | $17 80 | $16 91 | $6,599 10 |
| 1916 | 17 18 | 19 03 | 16 25 | *41,662 22* |
| 1917 | 21 85 | 23 86 | 18 08 | 80,984 09 |
| 1918 | 20 61 | 30 14 | 22 24 | 43,653 88 |
| 1919 | 23 40 | 36 56 | 25 97 | 137,062 20 |
| 1920 | 23 04 | 56 02 | 33 87 | 92,969·91 |
| 1921 | 23 36 | 32 33 | 33 42 | *24,961 02* |
| 1922 | 24 46 | 29 25 | 26 54 | 25,141 54 |
| 1923 | 27 14 | 38 34 | 28 25 | 114,349 76 |
| 1924 | 24 20 | 33 97 | 27 90 | 7,042 11 |

Red figures are indicated by italics.

"An analysis of this table shows the following:

"The inventory prices for the years 1916 and 1917 are in excess of the average cost for those years and only about $2 less than the average selling price.

"The inventory price for the year 1918 is $1.63 below average cost and $9.53 below average selling price. Furthermore, it is $1.24 per M less than the 1917 inventory price even though both the average cost and the average selling price had increased materially.

"The inventory prices for the years 1919, 1920, 1921, and 1922 show only a slight variation. This is due to the fact that the 1919 prices for the four classifications of lumber were used for all four years and the variation is due to increases and decreases in the quantities of lumber on hand in each group and not due to a change in the inventory prices used. It should be noted, however, that the average selling price for these same years increased from $36.56 in 1919 to $56.02 in 1920, which was the peak price for all years, and that in 1922 the average selling price was only $29.25 as compared to $56.02 in 1920, whereas the average inventory prices used in the 1922 inventory were actually larger than those used in 1920.

"In the administration of the Wisconsin income tax law, the Tax Commission is required to lay down general rules that may be applied to all types of business operating within this state, and it is necessary for the commission to lay down a method of taking inventories which will clearly reflect the correct income of all lines of business. To permit lumber companies to inventory at a more or less arbitrary market price when many manufacturing concerns could not under any conditions compute their inventories in such a manner would be unfair and inequitable. The importance of adopting a fair and consistent method of valuing inventories cannot be overestimated. Nothing in the whole fabric of business affects the net profit or loss statement more than the policy of inventory valuation. The policy adopted may result in the postponement of realized losses or the shifting to loss years of income actually earned in profit years.

"The Tax Commission has consistently held that inventories for the years prior to the 1920 closing inventory must be taken at cost. In the audit of the taxpayer corporation's books, the commission found that the methods of pricing the opening inventories as used by the taxpayer for the years 1916 to 1920 inclusive were not consistent, were computed at neither cost nor market, and did not reflect the true income of the corporation. A careful analysis was made of the elements of manufacturing cost. The average cost of all lumber manufactured for each of these years was determined and this average cost was applied to the inventory quantities on hand at the end of the year. Such a method is consistent and more nearly reflects the true income of the corporation. This will be readily apparent if reference is made to the schedule comparing the taxpayer's inventory prices with the revised cost prices used by the commission.

"The Tax Commission therefore determines and finds that the closing inventories for the years 1915 to 1919, inclusive, should be valued at the average cost of production for each of the years."

To the situation thus presented the commission applied the rule set out in the *Rust-Owen Lumber Co. v. Wisconsin Tax Commission Case,* decided herewith (*ante,* p. 385, 231 N. W. 870), and what is said in that case applies in this case.

With respect to surtaxes and constitutional questions raised, what was said in the *Northwestern Lumber Co. v. Wis. Tax Commission Case,* decided herewith (*ante,* p. 372, 231 N. W. 865), applies in this case, and it is referred to and made a part hereof as if set out at length herein.

*By the Court.*—Judgment of the circuit court is reversed, and cause remanded with directions to transmit the record to the Tax Commission for restatement of so much of the determination as applies to stumpage values and for adjustment of the tax accordingly. In other respects the judgment of the circuit court is affirmed.

A motion for a rehearing was denied, without costs, on November 11, 1930.